24-11442 Mr. Meier. Thank you, our John Meiers. I am the attorney for the appellant and may it please the court. So factually, we have some interesting things. I was trying to think of the parallel, but our client filled out an application for both what are called line of duty benefits and then what are called T&P benefits, which are top-level benefits. Total and permanent benefits, which pay a lot more than the line of duty benefits. He submitted, according to the complaint, because this is a Twombly type 12b6 motion, he submitted the paperwork to support, and it's minimal, just the application to support both types of benefits. And then in the box on the first page, according to our complaint, the X was scratched out, and there was no accompanying paperwork according to the appellee's position. So as a result of that, this was in 2006, he got a summary grant of the line of duty benefits, but there was silence about the T&P benefits. Right. I think we get the procedural and factual history, and then he didn't appeal the first denial, although he appealed some subsequent denials. And then more than a decade later, he asked for his application, gets it, believes that it's been altered, crossed out, page is missing, he files this lawsuit. That's correct, Your Honor. Okay, so tell me why you think he's entitled to equitable tolling of the statutory limitations period, putting everything else in your favor in this case. Why is he entitled to equitable tolling for such a long period of time? One answer, Your Honor, is he just didn't know. So he wasn't charged with notice of the denial, and he didn't get the form that would have given him the reasons for denial. But he knew it had, if he knew, okay, we accept the allegations in his complaint is true, of course. According to his complaint, he filed for both types of benefits, right? That's correct. In 2006, I think it was, right? Correct. So he had to know, even if he didn't know anything else, he had to know that his request for the T&P benefits had been denied that first go around, right? He had to know that. He may not have known the reason why. He may not have known that, for example, his requests had been crossed out and some pages were taken out of the application. But he had to know that if he applied for those and he didn't get them, they were denied, right? I would put it this way, Your Honor, because if I say yes, I lose, to be honest with you. So I would put it this way. Let's say I go to a restaurant tonight. I mean, you can look at my size. I go to too many restaurants. I fill out the credit card receipt, and something's vague on it. The restaurant is going to call me, right? They have my name from the credit card or from the reservation, and they're going to say, Mr. Myers, the tip's not filled out right, or did you really intend to not leave a tip? Or did you add an extra zero so instead of the dinner being 100, it's 1,000? I think you made a mistake. In this case, if whoever the intake panel was would have looked at his application and said, we don't know what he's applied for. Well, let's call him and clarify this. We don't have the paperwork. I think that is really what our core contention is, is that they had the obligation of their fiduciaries to say, this appears like he might have applied for both, the original application, 06. So, we need him to come back. The history, though, is that he applied. He got benefits, not the fancy benefits, but he got the other kind of benefits. Nothing was said by them or him about an application for these other benefits. But then in 2009, he applied for the better benefits, was denied, right? I don't know where that is in the record, Your Honor. I do see that we pled that he applied for benefits later and they were denied. But where the 09, 11, and 16 specific events came in, I don't know. They're not in the complaint. And so I think that's more of a, if we get into, was it a summary judgment issue, kind of converted into that. But I hear what you're saying. That's definitely in the brief and in the district court's decision. I guess my point is, he applied for these same benefits twice more, didn't appeal the denial of them, then applied in 2016 and got them, right? Well, they're different benefits, though, Your Honor, I think. He got a certain level of the TOD. A certain level of TOD. They are more lucrative, I would agree, Your Honor, from the LOD. But there are four levels. And what he didn't get was the 10 years, right, from 16 back to 06, of the highest tier. You know, football is a very brain-intensive sport, as you probably know. And he's not represented by counsel. And, you know, he's relying on the fiduciary to process his claim. And if they would have processed his claim, they would have come out with the detailed reasons for denial. He would have sought counsel because then it becomes a very fact-intensive, legally-intensive argument. And that's what he was deprived of because nobody called him and said, in my parallel, you didn't fill out your credit card, right, Mr. Myers? We're going to fix this for you now. And so I think I probably, by asking you the question, I didn't let you answer Judge Jordan's question, is assuming the exhaustion issue goes in your favor, why isn't the case clearly barred by the statute of limitations? It's the same kind of doctrine, Your Honor, under the equitable tolling situation. The statute of limitations is 42 months. He discovers in 21 that he's basically been robbed, my word, but, you know, that a big mistake was made against him. He took action within that 42-month statute of limitations that's in the plan by filing a lawsuit sometime, I think, in the spring of 2023. And that's within the 42-month statute of limitations. So our argument is, you know, it's like equitable tolling futility because there was nothing to appeal to the administrative process because, A, he didn't realize his claim had been denied, and, B, he didn't have the level of detail. Can I ask you a question about this very specific statute of limitations? It's a contractual statute of limitations instead of a statutory statute of limitations, right? That's right, Your Honor. So it seems to me to be a little bit more specific, perhaps, than the standard statute. It says, No suit or legal action with respect to an adverse benefit determination may be commenced more than 42 months from the date of the final decision on the claim for benefits. So it doesn't seem on its face to, like, admit of an obvious kind of, like, discovery rule or equitable gloss in the way that you might see on an ordinary statute of limitations. Am I missing something? Because you began your answer to Judge Corrigan by saying, well, he sort of had notice of the denial in 2019, and that was within the 42 months or whatever. But the statute itself says from the date of the final decision on the claim for benefits. There was, in fact, a final decision on a claim for benefits back in 2006. Yeah, there was, but they weren't the benefits that he had. There were only half of the benefits he applied for. I think what happened was, Your Honor, that final determination was on his own. He wrote to the plan saying, hey, I just found out the application's wrong. I want my benefits still. And then he got a letter that was a final denial of claim, that our decision is final. And that's what led him into the arms of a lawyer, and he filed suit where he was living in the Southern District of Florida, Your Honor. So is your argument, I'm trying to mix all of our questions together for you, but is your argument that his claim accrued for statute of limitations purposes when he got his application back from the plan? Or that his cause of action may have accrued plan-wise back in 2006 when there was a final decision, but due to the fraud that he's alleged and the misconduct that he's alleged, he gets equitable tolling, which allows him to file this lawsuit. Is it one or the other, or is it a combination of both? It's a combination of both, Your Honor, and either one would apply for us. He did take, when he realized his application was not his application, that somebody had changed it and deleted pages that he said he had submitted along with the LOD. There's different, like maybe a page or two that addresses the more lucrative benefits, which we're calling T&P. I think at that point when he realized that this was wrong, he took action. Maybe I'm getting far afield here, but as a practical matter, if he applied for those T&P benefits in 2009 and 2012 and was denied both times, what makes him think that if he gets the 2006 consideration, it's going to be any different? Well, we don't know the basis of the denial, Your Honor, and what level he applied at, but we should get the fair shot at doing that under the terms of the plan. That's all. And we realize that if we had an administrative record where here were the reasons for denial, as you know from the CFR statute, the Congress says you've got to – or the Department of Labor, you've got to do this, this, this, and that. It makes it very clear what you're appealing, where to attack, and that kind of thing. But I'm out of time unless you want me to keep going. No, no. You've saved your full time for rebuttal, Mr. Meyer. Thank you very much. Thank you so much. Mr. Meehan. Thank you, Your Honor. Good morning. Edward Meehan on behalf of the Defendant Plan and Board here. And just to be clear about one point so there is not a misunderstanding, I am not representing the NFL. I am not representing the union. These plans are separate, distinct legal entities created by collective bargaining. No, I know. That's why I said I was paraphrasing and summarizing, and that's not very good to do in law. So I'm corrected. Your Honor, I did not mean to correct the court. I understood. That's okay. We get things wrong all the time. So I understand that the plans are distinct entities, but they are offshoots of the NFL, right, to take care of players who have suffered some injury or disability as a course of their playing time. And, Your Honor, it goes beyond that. The most generous plans you're going to find because there are benefits here for individuals who have disabilities that do not arise from football. So it's a very generous plan, and I only wanted to make the point because it is sometimes confused that I speak for the NFL and I don't. All right. Let me tell you the one issue. There may be others, but the one issue where I think the district court may have gotten it wrong on your side, which is futility. The time for appeal has way passed based on the language in the plan, and the lawyer for the plans tells Mr. Aonatu that that 2006 decision is final, not subject to reconsideration, can't do anything else about it. That matter is closed. Given that, why isn't this a futility scenario with regards to exhaustion? I know you've got other issues, but why isn't this a futility scenario? Multiple reasons, Your Honor. In 2006, according to the initial complaint and the amended complaint, when the response came back from the plan, the conclusion by Mr. Aonatu was that his TNP benefit request, that it alleges, and we have to assume is true for the moment, was denied. That was his interpretation. It was denied. He took no action. He did, however, and it is mentioned in the second amended complaint in paragraph 43, that there were subsequent applications for benefits, 2009, 2011, which was addressed in 2012 at the committee level and 2013 at the board level, and then he applied again in 2016. And if I may, Your Honor, just two weeks ago he applied again. In 2009, when the TNP, the total and permanent benefits, were denied in all of their categories, the explanation laid out for him that he was determined not to be totally and permanently disabled under the definitions of the plan. He was determined by independent doctors that the plan sends players to be evaluated by, not to be disabled and to be employable. And in that context, the letter also explained that he was determined not to be qualified under any of the categories, which include the category he's seeking here, which is this, you know, active football. But that all goes to the merits, not to futility for exhaustion purposes. Your Honor, the way the lawyer for the plans tells him in a letter that 2000 is, what he's trying to do now is not file a new application. You said he just did that two weeks ago. But he's not trying to file a new application. What he's trying to do with this lawsuit is go back to the 2006 application and have that re-adjudicated in some sort of way. You have arguments about that. I understand those arguments. But I just don't see how once a representative, a legal representative of the plan, tells him this matter is closed, a 2006 decision is final, it's closed, it can't be reopened or whatever, that's not enough for futility purposes. In this sense, Your Honor, if we assume hypothetically that the allegations are actually correct, that someone unknown, for some unknown reason, tampered with his application in 2006, someone in the staff, in the plan benefit office, and he could have at that time appealed to the board the denial of the T&P aspect here, because it was not mentioned, it was in effect denied. If he had indeed applied for it and the letter was silent, the silence serves as a denial. Also, under the summary plan description, which he was provided before he submitted his application, there was a letter January 7 of 2006 that provided that summary plan description, it provides in that document that if the committee, the first level of review, does not render a decision on an application within the time periods that the plan and the law requires, he could have elected to treat that as a deemed denial and appealed straight to the board. So his actions in 2006 waived any argument he would have had that it was futile because he accepted the decision from the committee without going to the board to say, where is the decision on my other application for T&P? He didn't do that. Is the reason that the original adjudication, which as I understand it in 2006, did award him benefits at a lower level, is the reason that that decision didn't provide the notice of appeal rights and so forth, is that simply the higher level wasn't even at issue or decided? In 2006, as I understand the facts, the application is reviewed solely for the line of duty benefits, which are the lower level that he received. Consistent with that, there were two letters. Council had argued that there was no indication that came from the plan that the application was being viewed as a line of duty application. But in fact, documents 29-6 and 29-7 from the district court record are letters. One issued March 7 of 2006 and another issued April 4 of 2006 to Mr. Ahenotu, stating that the plan was reviewing his application for line of duty benefits. No mention that it was reviewing the application for total and permanent disability. That is because, as I understand the facts that we reviewed and investigated, this is a handwritten application. It has numerous interlineations, cross-outs, arrows. One of the cross-outs and arrows is being disputed. So, it was reviewed and determined by the plan benefit office in 2006 to be a situation, as often happens, that a handwritten submission comes in and it was interpreted as seeking line of duty benefits only. So, there are a number of issues that we have argued or presented to the court from a review of the document itself as to why it was appropriately interpreted as that only was confirmed in those letters. And are those letters and then the fact that the additional applications were made and denied and so forth, is that appropriately considered in the context of a motion to dismiss? The complaint, yes, I would say, Your Honor, in this respect for two reasons. One, the Second Amendment complaint specifically referred to the subsequent applications and specifically argued this point that there was no step taken to confirm what Mr. Ohno-Tune now says is that it was a mistake or that someone else changed it. And so, in that context, we did submit the letters. And the district court below did have some concern as to whether we might be going a little over the line and it might be converted to summary judgment. But there was no objection to the consideration of those materials, no motion to strike. And we think they were directly responsive to the allegations so they become material in interpreting the allegations on the face of the complaint. The question about the response that Mr. Ohno-Tune could have made in 2006 and why in 2021 the letter that came from our office indicating that those decisions from 2006 were final. To support that, when the application was made in 2009 where Mr. Ohno-Tune requested total and permanent disability benefits, bear in mind two points. That means he was asking for a determination as to whether he qualified under any of the four categories. The one he focuses on today is called active football, which in essence comes from Darryl Stingley. That was the origin of that category. It was subsequently... So an on-field injury that immediately led to a total and permanent disability. It was subsequently modified, liberalized in various ways. But a key point there is that the injury that a player would sustain would have to manifest itself within a maximum of 12 months in a total and permanent disability situation. In 2009, when Mr. Ohno-Tune applied for total and permanent disability, he did not specify the category. He was applying for any and all. He was evaluated not to qualify for any of them. In the summary plan description that he was provided in 2006 with his application form and in the 2009 response, the SPD points out that a player applying for total and permanent disability can seek to have retroactive qualification, if you will, that the application can look back up to the same 42 months that is set as effectively, as Judge Newsom pointed out, the statute of limitations here for any appeal that comes into court. In 2009, when the plan at the committee level, by using the advantage of referring Mr. Ohno to medical professionals to evaluate his circumstances, when they concluded and informed him he did not qualify for any category of total and permanent disability benefits, they were effectively saying to him, looking back 42 months, which would include his 2006, February 2006 application, that they were looking back to that entire time period and concluding that he was not eligible under any category. One of the arguments you made, one of the alternative grounds you raise for affirmance, one not addressed by the district court, is that there's nothing in the complaint which indicates that he was qualified for those T&P benefits in 2006. And therefore, the complaint fails to state a claim, even if you credit the allegation that someone tampered with and forged his application to only require the lesser benefits. Correct. That is our position. There's a failure of allegation there. And then you have the subsequent reviews, 2009, 2011 was the application, and then it's a review at a committee level decided in 2012. That one in 2012, the committee's decision, he did appeal to the board. That again was evaluated, denied. And in 2016, he was awarded benefits in what, by that point, was being called the inactive A category, which is a higher amount of benefits monetarily and not so time-limited as the line of duty. But it is a category that by necessity was concluding, again, that he was not satisfying the active football category, which has, among other issues, that 12-month maximum from injury to total and permanent. Can I ask you a practical question about how these benefits work? So he got the line of duty benefits first, right? Yes, correct. And then he was given a lower level of the higher T&P benefits, right? That's a fair way to look at it, yes. Okay. When he gets the second higher level of benefits, is that in addition to the LOD, or it takes over the LOD and becomes the only benefit payment? It was subsequent to. The line of duty benefits are, in effect, only for a limited period of time, for a maximum period of time. The total and permanent disability benefits, once one qualifies, one theoretically, so long as one remains eligible and the plan doesn't change in some fashion, can receive those for life. Okay. Got it. And so, just to maybe wrap up, the one quick point is that I know, of course, we are here reviewing a motion to dismiss, which is a de novo review, but the standard of review now in terms of whether the district court should have allowed the exhaustion argument is reviewed more on an abuse of discretion under Perino and other cases. So, under all of these facts and circumstances, our argument would be that he has multiple opportunities. He did not appeal any of those. He could have come to court. He could have pursued these issues, and he did not. And 17 years elapsed before any action was taken. So, that's where this all comes out. Thank you. All right. Thank you very much. All right. Just, like, it's interesting because paragraph 32, we were just talking, my opposing counsel, about whether he ever pled that he was eligible for these benefits, right? Did he state a claim that way? And paragraph 32 says, plaintiff was totally and permanently disabled shortly after active football as defined by the plan. So, we did plead that. Okay. Can I just ask you a question? I noticed in reading your brief, you didn't really focus too much on the district court. And, of course, we have an opinion from the district court. What did the district court, in its opinion, where did it go wrong? Well, I think it went wrong in a couple areas, Your Honor. One was to consider all of these other plan applications our client made because all we did in the complaint, second-minute complaint, was say after the LOD award letter, which would be the 2006 letter, but before June 21, plaintiff did make several applications for other T&P benefits. So, I think this whole thing got stretched into sort of litigating the synthesis, and he had all these opportunities to appeal, to quote him. But I really think that, at its heart, where the district court went wrong is the plan should consider this, right? What was his condition in 06, and how do you synthesize? Didn't the district court say that in these circumstances, that when the decision came out, and it awarded the benefits that it awarded, it didn't give the statutory notice of appeal, but the district court said that your client had access to that information and other sources, and you just have an odd situation where you have a final decision, but it appears neither you, neither your client, nor the defendant understood the higher benefits to be at issue, or at least that's the way it appears. And so, wasn't the district court saying in those circumstances, there's just not an excuse for failure to exhaust at the appropriate time? And I agree, Your Honor. Again, had someone called him and checked saying, you know, your application's vague, pages might be missing, help us rationalize, help us explain that, like my credit card example, then he would have been able to do that. He was denied that opportunity. Sure, and he, I mean, you know, we may be beyond everything there is to be beyond, but he also could have picked up the phone or written him a letter and said, what about those other benefits I applied for? True, Your Honor. Remember, he's a layman with football brain injuries, and he's not represented by counsel. And, you know, I know that we've explicitly argued that, but I think that, you know, the doctrine of equitable estoppel, the other legal doctrines we've argued here take into account that, you know, it's him against this big plan, right? And he's the little guy. And really all he's asking for is the opportunity through counsel to present the proper arguments. These plan documents are very sophisticated, and they have, you know, very good, I'm sure, administrators that look at things, decide to hold evidentiary hearings by Zoom, and that's really the opportunity he's asking for. That's all. Okay. Thank you all so much for your time. Thank you very much. Thank you. Thank you. Bye-bye. Bye-bye.